IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALLISON LANZI-BOLAND,

Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

Defendant.

No. 16 C 8856

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Allison Lanzi-Boland ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). The parties have filed cross-motions for summary judgment [ECF Nos. 10 and 18] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 10] is granted, and the Commissioner's Motion [ECF No. 18] is denied. This matter is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On November 30, 2012, Claimant filed her claim for DIB, alleging the onset of her disability as of October 28, 2009. (R. 198–204.) The claim was denied initially on April 24, 2013, and upon reconsideration on October 22, 2013, after which Claimant timely filed a request for a hearing. (R. 126.) Claimant, represented by non-attorney representative Carl Triebold,

---

[1] Nancy A. Berryhill is substituted for her predecessor Carolyn W. Colvin pursuant to Federal Rule of Civil Procedure 25(d).

appeared and testified at a hearing before Administrative Law Judge ("ALJ") Karen Sayon on December 8, 2014. (R. 44–80.) The ALJ also heard testimony from vocational expert (the "VE") Michelle Peters-Pagella. (R. 74–80.)

On February 9, 2015, the ALJ denied Claimant's claim for DIB, based on a finding that she was not disabled under the Act. (R. 22–35.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSR").[2] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since her alleged onset date of October 28, 2009, through her date last insured of June 30, 2014. (R. 24.) At step two, the ALJ found that Claimant had the severe impairments of fibromyalgia, obesity, and carpal tunnel syndrome. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P., Appendix 1. (R. 27.)

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform light work, except that she is "unable to climb ladders, ropes or scaffolds; is able to frequently but not constantly kneel and climb ramps and stairs; she is able to occasionally stoop; she is limited to frequent but not constant handling and fingering bilaterally; and her work should involve simple instructions and routine tasks." (R. 28.) Based on this RFC, the ALJ determined at step four that Claimant was unable to perform any of her past relevant work. (R. 34.) Lastly,

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

2

at step five, the ALJ found that given Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could have performed, such as assembler, hand packer, or sorter. (R. 34–35.) Therefore, the ALJ found that Claimant had not been under a disability from October 28, 2009, through June 30, 2014, the date last insured. (R. 35.) The Social Security Administration ("SSA") Appeals Council declined to review the matter on July 11, 2016, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the

Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

Claimant alleges a number of errors on appeal. First, Claimant contends that the ALJ failed to properly analyze her fibromyalgia pursuant to SSR 12-2p, which resulted in an improper assessment of the treating source opinion evidence as well as her subjective symptom statements and credibility. [ECF. No. 11, at 5–14.] Next, Claimant asserts that the ALJ failed to build a complete record. (*Id.*) Finally, Claimant argues that the ALJ failed to properly assess her mental impairments. (*Id.*)

#### A. The ALJ's Assessment of the Medical Opinion Evidence

Claimant first argues that the ALJ erred in assessing the opinions of her treating physicians. [ECF No. 11, at 8-16.] Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c).[4] Because of a treating physician's greater familiarity with the claimant's condition and the progression of her impairments, the opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016);

---

[4] Amendments to the regulations were published on January 18, 2017, Federal Register, Vol. 82, No. 11, page 5844-84. https://www.gpo.gov/fdsys/pkg/FR-2017-01-18/pdf/2017-00455.pdf#page29. Since the amendments only apply to claims filed on or after March 27, 2017, all references to the regulations in this opinion refer to the prior version.

4

*Clifford v. Apfel*, 227 F.3d at 870. When an ALJ decides not to give controlling weight to a claimant's treating physician, the ALJ must provide a sound explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our . . . decisions for the weight we give your treating source's opinion.").

Even when an ALJ provides good reasons for not giving controlling weight, she still must determine and articulate what weight, if any, to give the opinion. *Scott v. Astrue*, 647 F3d 734, 740 (7th Cir. 2011). In making that determination, the regulations require the ALJ to consider a variety of factors, including: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Here, the ALJ considered opinions from two of Claimant's treating physicians: Dr. Janet Leon, a rheumatologist, and Dr. Roberto Segura, a neurologist. (R. 32–33, 1150–54, 1157–61.) The ALJ accorded "little weight" to the opinions of Drs. Leon and Segura, and "great weight" to the opinions of the two state agency reviewing physicians. (R. 32–33.) The ALJ characterized the treating physicians' opinions as "broad conclusory statements that the claimant could not work full time," and concluded that the "clinical and diagnostic testing that was reflected in all of the treating physicians' records fail to support this reduced work capacity." (R. 32.) The ALJ also considered the opinion of Claimant's treating chiropractor, Dr. Patrick Balsier, but dismissed it because he is not considered "an acceptable medical source." (*Id.*).

5

1. **Claimant's Treating Physicians**

    **a. Dr. Janet Leon**

Dr. Leon opined that Claimant had the capacity to lift up to five pounds frequently and up to twenty pounds occasionally, she could occasionally balance and reach above shoulder level, but she could never climb, stoop, kneel, crouch, or crawl. (R. 1157.) Claimant could sit for up to thirty minutes in an eight-hour workday and stand/walk for up to twenty minutes in an eight-hour workday, and she would need to alternate between sitting and standing throughout the day. (*Id.*) Dr. Leon also opined that Claimant suffered from fatigue, noting that Claimant's fibromyalgia and medications could cause fatigue symptoms. (R. 1159.) Claimant's fatigue was disabling to the extent that only part-time work would be reasonable. (*Id.*) Additionally, Dr. Leon opined that Claimant's pain and medication side effects would result in moderate limitations in concentration and attention. (R. 1161.) The Court concludes that the ALJ's decision to accord Dr. Leon's opinion "little weight" is not supported by substantial evidence or at a minimum is not sufficiently explained.

In assessing Dr. Leon's opinion, the ALJ demonstrated an all too common misunderstanding of the nature of Claimant's fibromyalgia and its effects on her ability to work. For example, the ALJ's primary reason for discounting Dr. Leon's opinion was that it was "largely based upon the claimant's subjective complaints." (R. 32.) However, as the Seventh Circuit has explained, when analyzing claims of fibromyalgia, one should be cognizant that "its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness . . . ." *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996); *see also Kurth v. Astrue*, 568 F. Supp. 2d 1020, 1032–33 (W.D. Wis. 2008) ("Subjective complaints in [a fibromyalgia case] are more

6

important than in other cases because they are clinical indicators of the disease of fibromyalgia.").

Here, the ALJ concluded that Dr. Leon's findings on examination failed to support the extensive functional limitations provided in her opinion. (R. 32.) She recited an extensive list of previous diagnostic testing which yielded negative or normal results, and emphasized physical examination findings of normal range of motion, motor strength, reflexes, and gait. (*Id.*) But this approach is problematic because the testing the ALJ relied upon to discount Dr. Leon's opinions is precisely the type of testing that doctors frequently use to *rule out* other conditions in diagnosing fibromyalgia.[5] An ALJ must ensure that the "objective" evidence she considers is pertinent to the claimant's impairments. *See, e.g., Sarchet*, 78 F.3d at 307 ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced."); *Vacco v. Colvin*, No. 14 C 1139, 2016 WL 738455, at *7 (N.D. Ill. Feb. 25, 2016) ("[W]hether Plaintiff had normal range of motion, motor strength, reflexes and gait . . . does not undermine [the treating physicians'] fibromyalgia diagnoses or their opinions on her limitations. Indeed, these objective tests were likely used to *rule out other causes* of Plaintiff's chronic pain and fatigue.") (emphasis in original). And, because the ALJ accepted Claimant's fibromyalgia diagnosis and found it to be a severe impairment, her reliance on these negative or normal findings in affording Dr. Leon's opinions less weight is somewhat puzzling.

Even assuming that the ALJ provided "good reasons" for not affording Dr. Leon's opinion controlling weight, she was still required to address the factors listed in 20 C.F.R. §

---

[5] *See* WebMD: Fibromyalgia Diagnosis and Misdiagnosis,
<http://www.webmd.com/fibromyalgia/guide/fibromyalgia-diagnosis-and-misdiagnosis#1>

404.1527 to determine what weight to give the opinion. SSR 96-2p. SSR 96-2p states that treating source medical opinions "are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." (*Id.*). 20 C.F.R. § 404.1527(c); *Yurt*, 758 F.3d at 860; *Moss*, 555 F.3d at 561. In this case, the ALJ afforded Dr. Leon's opinion "little weight," but failed to analyze her opinion with regard to the regulatory factors. Multiple factors favor crediting Dr. Leon's opinions, including Dr. Leon's specialty as a rheumatologist, the nature and duration of the examining relationship, the length and extent of the treatment relationship, and the degree to which the opinion is consistent with the entire record. "Proper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Leon's] opinions." *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Accordingly, remand is necessary for the ALJ to properly analyze and sufficiently explain the weight to be afforded to the opinions of Dr. Leon.

**b. Roberto Segura, M.D.**

Dr. Segura evaluated Claimant on two separate occasions: September 30, 2013, and October 20, 2014. (R. 1155–56, 1255–56.) On each occasion, Dr. Segura performed EMG testing and a neurological evaluation, and diagnosed Claimant with carpal tunnel syndrome. (*Id.*) His opinions were largely consistent with Dr. Leon's, although there were some minor differences between the two physicians regarding Claimant's postural limitations and sitting/standing abilities. (R. 1150–54.) For example, Dr. Segura opined that Claimant could sit for up to four hours in an eight-hour workday and stand/walk for up to two hours in an eight-hour workday. (R. 1150.) Dr. Segura further opined that Claimant could lift up to five pounds occasionally, could occasionally climb, stoop, kneel, and reach above shoulder level, and could never balance, crouch, or crawl. (R. 1151.) Despite the relatively minor differences in their

8

opinions, Dr. Segura and Dr. Leon nevertheless both arrived at the same ultimate conclusion—that Claimant's chronic fatigue and fibromyalgia pain were disabling to the extent that it would prevent her from working full-time, even at a sedentary position. (R. 1150–54, 1157–61.) Additionally, both doctors opined that Claimant's pain and the side effects of her medications would moderately affect her attention and concentration. (R. 1154, 1161.)

The ALJ accepted Dr. Segura'a diagnosis of carpal tunnel syndrome and found it to be a severe impairment. (R. 26, 32–33.) However, she concluded that "the significant reduced work level of less than full time with alternate sitting and standing with other postural and environmental limitations are not supported in the Claimant's clinical and diagnostic findings," and therefore afforded Dr. Segura's opinion "little weight." (R. 32–33.) The Court finds the ALJ's explanation of the weight to be given to Dr. Segura's opinion is insufficient. For example, the ALJ noted that Claimant consistently presented for treatment with normal gait and normal strength and no neurological deficits, yet offered no discussion as to how these findings were inconsistent with Dr. Segura's conclusions as to Claimant's work abilities and limitations. (R. 33.) And, as discussed above, considering Claimant's fibromyalgia, such normal findings do not automatically undermine Dr. Segura's opinions. The ALJ also commented on Dr. Segura's treatment recommendations, including acupuncture (which could not be done due to sugar issues) and a pain psychologist, but failed to explain how these recommendations undermined Dr. Segura's opinion. (*Id.*) Without further discussion from the ALJ, the Court cannot conclude that her decision to afford Dr. Segura's opinion "little weight" is supported by substantial evidence.

Moreover, an ALJ has a duty to adequately explain a decision to give greater weight to the opinions of state agency reviewers than to the opinion of a treating physician. *Campbell v.*

*Astrue*, 627 F.3d at 309. Here, the ALJ gave "great weight" to the state agency medical consultant opinions and their finding of light work. (R. 33.) Dr. Young-Ja Kim opined that Claimant could lift 20 pounds occasionally and 10 pounds frequently, could sit and stand and/or walk for six hours in an eight-hour workday, and could occasionally climb ladders, ropes, scaffolds, and ramps/stairs. (R. 89–90.) The ALJ concluded that the postural limitations were "consistent with the longitudinal medical evidence that supports conservative treatment only with normal strength, gait, and minimal findings on exams." (R. 33.) The Court concludes that the ALJ failed to adequately explain how the opinions of Claimant's two treating physicians (in particular, that of Dr. Leon, who possessed the relevant specialty for fibromyalgia) were deserving of less weight than the opinions of the two non-examining state agency consultants. *See Sarchet,* 78 F.3d at 307 ("Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist."); *see also* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

In sum, the ALJ failed to "build a logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. For the reasons set forth above, the ALJ's decision to accord "little weight" to the opinions of Claimant's treating physicians is not supported by substantial evidence or at a minimum is not sufficiently explained. On remand, the ALJ should reevaluate the weight to be afforded to the opinions of Drs. Leon and Segura. If the ALJ finds "good reasons" for not giving the opinions controlling weight, the ALJ should explicitly consider the appropriate regulatory factors in determining the weight to give each opinion. *See Moss*, 555 F.3d at 561.

## 2. Claimant's Treating Chiropractor

Claimant additionally asserts that the ALJ's dismissal of Dr. Balsier's opinion was erroneous. Dr. Balsier, consistent with Dr. Leon and Dr. Segura, opined that Claimant's chronic fatigue and fibromyalgia pain were disabling to the extent that it would prevent her from working full-time, even at a sedentary position. (R. 1174, 1177.) The ALJ dismissed this opinion, affording it no weight namely because "Dr. Balsier is a chiropractor and not an acceptable medical source." (R. 32.) Additionally, the ALJ found that Dr. Balsier's opinion was undermined by a gap in treatment between 2012 and 2013, and was inconsistent "with the findings on diagnostic and clinical exam findings as provided by Dr. Leon and throughout the record." (*Id.*)

The Court agrees that Dr. Balsier's opinion was not entitled to controlling weight, but notes that opinions from medical sources "who are not technically deemed 'acceptable medical sources' . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-3p. Thus, Dr. Balsier's opinion must, at a minimum, be evaluated properly. On remand, the Court encourages the ALJ to take the opportunity to more thoroughly evaluate Dr. Balsier's opinion, particularly in light of the Court's discussion above of the ALJ's misplaced reliance on diagnostic and clinical findings in her assessment of Dr. Leon's opinion. *Id.* ("The adjudicator generally should explain the weight given to opinions from [medical sources who are not acceptable medical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

## B. The ALJ's Credibility Determination

Claimant next contends that the ALJ erred in evaluating her subjective symptom statements and credibility. [ECF No. 11, at 11–13.] As an initial matter, the Court notes that since the ALJ issued his decision in this case, the SSA issued a new Policy Interpretation Ruling, which became effective March 28, 2016, regarding how ALJs should assess and evaluate claimants' symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029. The new ruling, which does apply to matters on appeal, eliminates the term "credibility" from the SSA's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. However, the regulatory factors that ALJs must consider in evaluating the intensity, persistence, and limiting facts of an individual's symptoms remain unchanged, and applicable Seventh Circuit precedent still applies. *See* SSR 16-3p, 2016 WL 1119029 at *7, citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The new SSR directs ALJs to focus on the "intensity and persistence of [the claimant's] symptoms" rather than on "credibility." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) ("The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence"). Because SSR 16-3p is simply a clarification of the SSA's interpretation of existing law, rather than a change to it, the new ruling applies to Claimant's argument in this case. *See Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016); *Hagberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. April 27, 2016).

As discussed above, the new SSR still requires the ALJ to consider familiar factors in evaluating the intensity, persistence and limiting effects of a claimant's symptoms such as

12

testimony, objective medical treatment, medication and its side effects, daily activities, etc. *See* SSR 16-3p, 2016 WL 1119029, at *4–7, citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ need not mention every piece of evidence in his opinion (*see Craft v. Astrue*, 539 F.3d 668, 673(7th Cir. 2008)), but an ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts by ignoring evidence that points to a disability finding. *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010). Moreover, an ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The Court will not overturn an ALJ's credibility determination unless it is "patently wrong." *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). A credibility determination is patently wrong when it "lacks any explanation or support." *Elder*, 529 F.3d at 413. The patently wrong standard is "extremely deferential" to an ALJ's credibility determination. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). In this case, the Court concludes that the ALJ's opinion offers inadequate support for her credibility determination.

Because fibromyalgia "often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease[ ]." *Johnson v. Colvin*, No. 13 C 1023, 2014 WL 2765701 (E.D. Wis. June 18, 2014) (citing *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996)). At the outset, the Court notes that the ALJ herself accepted Claimant's diagnosis of fibromyalgia and found that it qualified as a severe impairment, so "it is puzzling how the ALJ could consider [Claimant's] subjective complaints associated with that condition to be a basis for challenging her credibility." *Newton v. Colvin*, No. 12 CV 776, 2014 WL 772659, at *11 (N.D. Ind. Feb. 25, 2014).

13

In particular, the Court finds that the ALJ improperly assessed Claimant's statements regarding her chronic fatigue and need to take daily naps. Claimant testified that she is unable to work because of her fibromyalgia and chronic fatigue. (R. 58.) She is unable to sleep through the night because of her pain; her pain usually wakes her up every two to three hours. (R. 59.) Claimant stated she takes daily naps, anywhere from 30 minutes up to four hours, and often stays in bed for days at a time, approximately 15 to 20 days a month. (R. 59–60, 66.) Her medications often make her drowsy. (R. 63.) The ALJ discounted this testimony and Claimant's complaints of chronic fatigue because of a lack of support in the treatment record and the fact that Claimant consistently presented for treatment as alert and oriented and in no acute distress. (R. 29, 30, 31, 32.) However, support for Claimant's statements about her chronic fatigue exists throughout the treatment records. For instance, Claimant reported constant fatigue at each visit to Dr. Leon (*see, e.g.,* R. 1036, 1042, 1049, 1052, 1056, 1063, 1167), as well as at many of her visits with Dr. Liu, her primary care physician. (*See, e.g.,* R. 528, 549, 604, 624, 778, 792, 801, 816, 909, 1201.) Dr. Leon consistently included fatigue and malaise in her diagnoses, and noted that fatigue was a recognized side effect of Claimant's medications. (R. 1036–65, 1165–71.)

Moreover, the ALJ offered no explanation as to how notations that Claimant was alert or in no acute distress at a doctor's appointment undermined Claimant's statements and testimony that she was fatigued and required daily naps. None of the doctors who made these observations viewed them as inconsistent, and "without medical evidence suggesting a discrepancy between [Claimant's] alleged chronic [fatigue] and her alert appearance, the ALJ impermissibly substituted her own judgment for that of the physicians." *Goble*, 385 F. App'x at 591 (citations omitted). Drs. Leon, Segura, and Balsier all indicated that Claimant suffered from fatigue because of her fibromyalgia, and opined that her fatigue was disabling to the extent that it would

preclude her from full-time work. (R. 1152, 1159, 1174.) Simply put, no medical provider mentioned any inconsistency between complaining of chronic fatigue and appearing alert and pleasant during a visit to the doctor. *See Goble*, 385 F. App'x at 591.

The ALJ also discredited Claimant because her treatment for her fibromyalgia had "mainly consisted of conservative chiropractic treatment and medications without any ongoing physical therapy." (R. 31.) However, the ALJ's characterization of Claimant's treatment as conservative misapprehends the medical options available for treating fibromyalgia. Because there is no cure for fibromyalgia, treatment options are constrained to nonnarcotic pain relievers, exercise, and stress-reduction measures.[6] Dr. Leon indicated that because Claimant had experienced adverse side effects from nearly all of the medications used to treat fibromyalgia, there was not much she could do for her. (R. 1170.) And, although she commented on Claimant's lack of physical therapy, the ALJ never asked Claimant why she did not pursue physical therapy, and ignored Claimant's March 8, 2013, Adult Function Report in which she indicated that physical therapy was too strenuous for her. (R. 274.)

Additionally, the Court is deeply troubled by the ALJ's reliance on Claimant's choices to discontinue use of certain medications because she and her husband were trying to conceive in assessing Claimant's credibility. In this regard, the ALJ stated:

> "Notably, despite her allegations of pain, the claimant did not want to take Neurontin for pain and symptoms that previously helped. She opted to pursue expanding her family . . . Accordingly, although the claimant has access to medical care and to medications, she has voluntarily chosen not to avail herself of medications prescribed to ameliorate her pain and symptoms. *This is a significant factor tending to diminish her credibility with respect to the degree of pain/symptomology alleged.*"

(R. 29.) There is simply no logical link between Claimant's decision to get pregnant and the

---

[6] *See* Mayo Clinic: Fibromyalgia <http://www.mayoclinic.org/diseases-conditions/fibromyalgia/home/ovc-20317786>

15

degree of pain and symptomology alleged.

The ALJ additionally faulted Claimant for failing to see a rheumatologist despite Dr. Liu's March 19, 2010, referral, stating that Claimant's "initial lack of follow up with treatment recommendations undermines her allegations." (R. 29.) However, Dr. Liu's records from May 25, 2010, indicate Claimant had plans to see a rheumatologist, and by July 15, 2010, Claimant's current medications included Savella, which had been prescribed by a rheumatologist. (R. 576, 585.) Similarly, the ALJ referenced Claimant's gap in treatment with Dr. Liu from October 2013 through July of 2014 as an additional basis for discounting Claimant's allegations of pain and resulting limitations and restrictions. (R. 30.) "[A] history of sporadic treatment . . . can undermine a claimant's credibility," *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012), but only where "the claimant does not have a good reason for the failure or infrequency of treatment." *Craft*, 539 F.3d at 679. Here, the reason for this gap in treatment was addressed at the hearing, where Claimant testified that although she was not seeing Dr. Liu during that time period, she was still seeing other physicians of different specialties. (R. 68.) Thus, it was improper to undermine Claimant's credibility based on this perceived gap in treatment. *See Roddy v. Astrue*, 705 F.3d 631, 638-39 (7th Cir. 2013) (although ALJ elicited testimony regarding claimant's inability to afford medical insurance, he then incorrectly based his negative credibility determination in part on the claimant's failure to seek medical treatment).

The ALJ further compounded this error by relying on evidence of Claimant's medication "noncompliance" when she returned to see Dr. Liu in 2014. (R. 30.) Specifically, the ALJ pointed to an August 1, 2014, treatment note indicating that Claimant had stopped taking Metformin. (R. 1204.) But Metformin is used to treat diabetes,[7] and the ALJ failed to build a

---

[7] Metformin is an oral diabetes medicine that helps control blood sugar levels. *See* https://www.drugs.com/metformin.html

16

logical bridge from Claimant's noncompliance with her diabetes medication to her conclusion that Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." (R. 30.) Moreover, Dr. Liu did not indicate that Claimant had been noncompliant with her fibromyalgia treatment; in fact, Dr. Liu specifically noted Claimant's efforts in seeking treatment for her fibromyalgia, including trying a number of medications and seeing doctors of different specialties. (R. 1204.) In any event, if the ALJ wanted to rely on Claimant's perceived lack of treatment or failure to follow treatment recommendations to support her credibility finding, then she should have inquired into the reasons behind such failures. Nothing in the record suggests this was done. *See Shauger*, 675 F.3d at 696–98 (reversing where an ALJ both failed to seek an explanation for a perceived lack of treatment and the analysis rested on a misreading of the administrative record.).

In sum, the Court concludes that without a sufficient explanation that connects the record evidence to the ALJ's conclusion, the basis for the ALJ's adverse credibility determination is unclear and unreviewable. The Court, however, is not suggesting that the ALJ's credibility determination is incorrect or patently wrong, but only that greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). On remand, the ALJ should re-evaluate Claimant's complaints of pain and related limitations, with due regard to the full range of medical evidence and appropriate consideration of the unique nature of fibromyalgia, sufficiently articulate how she evaluated that evidence, and then explain the logical bridge from the evidence to her conclusions.

## C. Failure to Develop the Record

Finally, Claimant alleges that the ALJ failed to fully develop the record. [ECF No. 11, at 8.] An ALJ has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098

17

(7th Cir. 2009). At a minimum, this obligation demands that an ALJ ensure the record has "enough information to assess the claimant's RFC and to make a disability determination." *Martin v. Astrue*, 345 F. App'x 197, 201 (7th Cir. 2009). Where a claimant does not have counsel, however, this duty is "enhanced." *Nelms*, 553 F.3d at 1098. In such a case, "the ALJ must 'scrupulously and conscientiously [ ] probe into, inquire of, and explore for all the relevant facts.'" *Id.* (quoting *Thompson v. Sullivan*, 933 F.2d 581, 585–86 (7th Cir. 1991)). Therefore, while a *pro se* litigant "must furnish some medical evidence to support [her] claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Id.* (internal citation omitted). If an ALJ's failure to develop the record results in a significant and prejudicial omission, then remand is appropriate. *Nelms*, 553 F.3d at 1098.

The Court recognizes that within her argument that the ALJ failed to fully develop the record Claimant raises waiver issues and asserts that this "enhanced" *pro se* standard applies because she was represented by a non-attorney representative, Carl Triebold. However, the Court respects that many non-attorney representatives may be effective advocates for claimants and does not intend to question whether Mr. Triebold served Claimant well in this case. Further, with regard to this issue, it is of little significance that Claimant was not represented by an attorney, and the Court need not decide whether the *pro se* standard applies in this instance because the ALJ's development of the record fell below even the minimum requirement.

At the hearing, the ALJ noted that there was no opinion in the record from Dr. Liu, Claimant's primary care physician. (R. 61.) Mr. Triebold indicated that a physical capacities evaluation form had been sent to Dr. Liu, but the form had never been returned. (R. 68.) Given

that the treatment records from Dr. Liu date as far back as October of 2008, and considering the frequency of Claimant's visits with Dr. Liu over the years, it is clear that an assessment from Dr. Liu would have provided valuable insight into Claimant's condition, her abilities, and her limitations. Accordingly, on the facts of this particular case, the ALJ should have sought to further develop the record by, at a very minimum, reaching out to Dr. Liu for an opinion.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue,* 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor.

## IV. CONCLUSION

For the reasons discussed in the Court's Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 10] is granted, and the Commissioner's Motion [ECF No. 18] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 24, 2017